UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE ALFONSO ZELAYA JAIME,

       Plaintiff,      **REPORT AND**
                 **RECOMMENDATION**
                 CV 17-1499 (ADS)(ARL)

    -against-

DAVID AND SON'S CONSTRUCTION CORP.,
and DAVID GRANADOS,

       Defendants.
-----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

   This matter was referred to the undersigned by District Judge Spatt for the purpose of

issuing a report and recommendation to address whether the motion for default judgment should

be granted, and if so, the appropriate relief to be awarded to Plaintiff Jose Alfonso Zelaya Jaime

("Plaintiff").  Plaintiff has submitted a memorandum of law and the declarations of Plaintiff and

Keith E. Williams, Esq. along with exhibits, in support of his motion.  Despite having been

served with the motion, Defendants David and Son's Construction Corp. ("D&S Construction")

and David Granados ("Granados") (collectively, "Defendants") have not submitted papers in

opposition to the motion.  Based upon the information submitted by Plaintiff, the undersigned

respectfully recommends that Plaintiff's motion for default judgment be granted and that Plaintiff

be awarded damages in the following amounts: $59,095.74 in minimum wages; $27,951.73 in

overtime wages; $7,053.25 for spread-of-hours wages; $5,000 for wage notice violations and

$5,000 for wage statement violations; $94,100.72 in liquidated damages and prejudgment interest

at the rate of 9% per annum through the date of entry of judgment for a total amount of

$198,201.44 plus post-judgment interest.

**BACKGROUND**

The following facts are taken from the complaint as well as the motion for default judgment and the exhibits attached to the motion.  D&S Construction owns and operates a construction company in Nassau County, New York. ECF 1, ¶ 7.  The gross annual volume of sales made or business done by D&S Construction for the years 2016, 2015 and 2014 was not less than $500,000 in revenue per year.  *Id*. ¶ 54.  Defendants' employees, including Plaintiff, engaged in interstate commerce, as they handle goods that are moved in interstate commerce.[1] *Id*. ¶ 55.  Granados is the owner and principal of D&S Construction who had the authority to hire and fire employees and had the ability to set employees' pay.  *Id*. ¶ 9.

Plaintiff is a former employee of D&S Construction who was hired as a construction helper from, on or about, August 2013.  *Id*. ¶ 5.  In this position Plaintiff's primary responsibilities included mixing and pouring cement for driveways, building pool patios, laying brick for patios, assembling fountains, and assisting in the construction of barrier walls.  *Id*. ¶ 11. Plaintiff was employed for the benefit of and at the direction of Defendants.  *Id*. ¶ 10.

The complaint sets forth specific allegations as to the number of hours worked by Plaintiff for specified dates.  Essentially, the Plaintiff worked more than forty hours per week and was not paid overtime compensation for hours worked past forty.  In addition, Plaintiff routinely worked more than ten hours per day and did not receive spread-of-hours compensation for these

---

[1]  A business qualifies as an "enterprise" under the FLSA where it "has employees engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an "annual gross volume of sales made or business done [that] is not less than $500,000."  29 U.S.C. § 203(s)(1)(A).

shifts.

Based on the foregoing allegations, Plaintiff commenced this action on March 17, 2017, seeking to recover unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 *et seq.* ("NYLL"). ECF 1. The complaint asserts that Defendants' failure to pay the required compensation was done willfully and with a reckless disregard to Plaintiff's rights.

D&S Construction and Granados were both served with the summons and complaint. D&S Construction was served with the summons and complaint via the Secretary of State of New York on March 24, 2017. ECF 7. Granados was personally served with the summons and complaint on March 28, 2017. ECF 6. Defendants have not interposed an answer or otherwise responded to the complaint. Plaintiff moved for entry of default and on December 13, 2017, the Clerk of the Court certified Defendants' default based upon their failure to answer or otherwise appear in this action. ECF 9. On February 12, 2018, Plaintiff filed the instant motion for a default judgment. ECF 11. By Order dated February 13, 2018, District Judge Spatt referred the motion for default judgment to the undersigned, for a recommendation as to whether the motion should be granted and if so, (1) the relief to be granted; (2) whether damages should be awarded, including reasonable attorneys' fees and costs; and (3) whether any other relief should be granted.

## DISCUSSION

### A.    Legal Standard Governing Defaults

Rule 55 of the Federal Rules of Civil Procedure "provides a two-step process for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d

Cir. 2011) (internal quotation marks and citation omitted).  Pursuant to Rule 55(a), the Clerk of the Court first enters a default against a defendant by noting the defaulting party's failure to plead or "otherwise defend." Fed. R. Civ. P. 55(a).  Second, after the Clerk enters that default, if the party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. Fed. R. Civ. P. 55(b).  In determining whether a default judgment should be entered, "the Second Circuit has cautioned that a default judgment is an extreme remedy that must remain a weapon of last, rather than first resort." *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *3 (E.D.N.Y. Nov. 13, 2013) (internal quotation marks and citations omitted).  In view of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and any doubts should be resolved in favor of the defaulting party. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95-96 (2d Cir. 1993); *see Ferrara v. Stallone Testing Labs., Inc.*, No. 10 CV 901, 2011 WL 3847123, at *2 (E.D.N.Y. Aug. 5, 2011).

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations in the complaint," except for those relating to damages. *Mickalis Pawn Shop, LLC,* 645 F.3d at 137; *see Cotton v. Slone,* 4 F.3d 176, 181 (2d Cir. 1993); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). "Although all well-pleaded allegations are deemed to have been admitted upon a default, that does not necessarily mean that liability as a matter of law has been sufficiently pled by the plaintiff." *Chudomel v. Dynamic Recovery Servs., Inc.,* No. 12-CV-05365, 2013 WL 5970613, at *6 (E.D.N.Y. Nov. 8, 2013); *see Mickalis Pawn Shop, LLC,* 645 F.3d at 137 n.23 ("a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim

4

for relief"); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (same).  A default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Import and Export Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) (summary order).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citations omitted).  Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. "Accordingly the [c]ourt "must determine whether the well-pleaded allegations in the Complaint, admitted by [d]efendants on this motion, are sufficient to establish liability for the claimed causes of action." *Broadcast Music, Inc. v. Pamdh Enter., Inc.*, No. 13-CV-2255 (KMW), 2014 WL 2781846, at *2 (S.D.N.Y. June 19, 2014) (internal quotation marks and citation omitted).

If the allegations in the complaint suffice to establish liability, the court then conducts an inquiry to determine the amount of damages to a "reasonable certainty." *Bounty Fresh, LLC v. J N.Y. Produce, Inc,* No. 12-CV-2415 (FB)(JO), 2014 WL 1010833, at *2 (E.D.N.Y. Mar. 14, 2014); *see Greyhound Exhibitgroup, Inc.,* 973 F.2d at 158.   A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.

**B.      Liability**

**1.      As to Whether the Defendants are Liable Under the FLSA**

To establish a claim under the FLSA, Plaintiff must prove that (1) the Defendant is an employer subject to the FLSA; (2) the Plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Guardado v. 13 Wall St., Inc.*, No. 15 CV 2482, 2016 WL 7480358, at *6 (E.D.N.Y. Dec. 2, 2016), *adopted by*, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016).

**a.      Employer Subject to FLSA**

An employer is subject to the FLSA if it is "(1)[] engaged in commerce or in the production of goods for commerce or (2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *See Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and has employees that engage in interstate commerce.  29 U.S.C. § 203(s)(1)(A); *Valdez*, 2016 WL 3079028, at *2.

Plaintiff alleges that the gross annual volume of sales made or business done by D&S Construction for the years 2016, 2015 and 2014 was not less than $500,000 in revenue per year. ECF 1, ¶ 54.  Plaintiff further alleges that at all relevant times, D&S Construction was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.  *Id.* ¶ 55. Although Plaintiff does not provide specific instances of interstate commerce, the Court can infer an interstate nexus based upon factual allegations pertaining to

6

Plaintiff's employment.  As Plaintiff worked in the construction industry and used various materials to mix and pour cement for driveways, build pool patios, assemble fountains, and construct barrier walls, it can be reasonably inferred that at lease some of the materials used originated outside of New York.  *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14 CV 3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (inferring interstate commerce where Defendants were engaged in the food supply industry).  Accordingly, the Court respectfully recommends that Defendants be deemed an employer under the FLSA.

### b.  Employer-Employee Relationship

Pursuant to the FLSA, an "employee" is "any individual employed by an employer". 29 U.S.C. § 203(e)(1).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  To determine whether an individual is an "employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employee [], (2) supervised and controlled the employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F. 3d 99, 104-105 (2d Cir. 2013)(citation omitted).  In determining whether a plaintiff is an "employee," the "ultimate question is ... 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render services or [is] in business for [himself].'" *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quoting *Godoy v. Restaurant Opportunity Ctr. Of New York, Inc.*, 615 F. Supp. 2d 186, 192 (S.D.N.Y. 2009)).

7

An individual corporate officer may be deemed an employer under the FLSA "in situations where the individual has overall operational control of the corporation, possess an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *See Lopez v. Silverman*, 14 F. Supp 2d 405, 412 (S.D.N.Y. 1998); *see also*, *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages")(citation omitted).

Plaintiff has alleged employment by D&S Construction, and that Granados participated in decisions and work assignments regarding Plaintiff's employment.  ECF 1, ¶¶ 43-50; Declaration of Jose Alfonso Zelaya Jaime, dated Feb,. 5, 2018 ("Jamie Decl.") ¶¶ 30-37.  Plaintiff additionally alleges, that Granados participated in and supervised the day-to-day operations of D&S Construction including hiring decisions, directing, implementing, and supervising the wage and hour practices and policies relating to the employees.  *Id.;*  Jamie Decl. ¶¶ 30-37.

Here, the Complaint sufficiently alleges that Defendants are employers covered under the FLSA.  Plaintiff states that Granados is an officer of D&S Construction, where Plaintiff was employed as a construction helper.  ECF 1, ¶ 9.   Plaintiff specifically articulates that Granados determined the amount of Plaintiff's compensation and the means by which he was paid.  *Id.* at ¶¶ 47-50.   Accordingly, and in light of the Defendants' default, the Court respectfully recommends that Plaintiff has adequately proven the employer-employee relationship required under the FLSA to impose liability.

8

### c.     Non-exempt Employee Status

Plaintiff specifically alleges that he was not exempt from the FLSA or state laws during

his employment with Defendants.  ECF 1, ¶¶ 60, 69.  The hours Plaintiff worked and the duties

he performed, which included mixing and pouring cement for driveways, building pool patios,

laying brick for patios, assembling fountains, and assisting in the construction of barrier walls,

were all controlled by Defendants.  *Id.* ¶¶ 43-50; Jamie Decl. ¶¶ 30-37.  Therefore, it follows

"that for the purposes of this default, [Plaintiff] qualifies as an employee under the FLSA." *See*

*Garcia v. Badyna*, No. 13 CV 4021, at *5 (E.D.N.Y. Sept. 23, 2014).  In addition, "the burden of

demonstrating that an employee falls within [an] exempted categor[y] rests squarely with the

employer." *Saucedo v. On the Spot Audio Corp.*, No. 16 CV 0451, 2016 WL 8376837, at *5

(E.D.N.Y. Dec. 21, 2016) *adopted by*, 2017 WL 780799 (E.D.N.Y. Feb. 27, 2017)(citing *Chen v.*

*Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014)(noting that the exemptions are

affirmative defenses which an employer must prove)).

Here, as the Defendants have failed to appear, the affirmative defense of exemption has

not been raised.  Accordingly, the Court respectfully recommends that there is no basis for

finding Plaintiff's employment to be exempt from the FLSA provisions.

### 2.     Whether Defendants are Liable Under the NYLL

The NYLL definitions are substantially similar, but slightly broader than the requirements

set forth under the FLSA. *Guardado*, 2016 WL 7480358, at *5 (collecting cases).  Therefore*, in*

this Circuit, once liability under the FLSA has been established, a court will routinely impose

liability for violations under the NYLL. *Id.*  Accordingly, as having held that Defendants are

employers under the FLSA, the Court respectfully recommends that Defendants are also deemed

employers under the NYLL.

**3.      Statute of Limitations**

Plaintiff asserts claims under both the NYLL and the FLSA.  The statute of limitations is

six years under the NYLL and two years under the FLSA.  *See* NYLL § 663(3); 29 U.S.C. §

255(a).  However, if an employer's actions are found to be "willful," the statute of limitations

under the FLSA increases to three years.  29 U.S.C. § 255(a).  Plaintiff asserts that the

Defendants' were willful, a fact the Court accepts as true given Defendants' default.  Therefore,

the limitations period for the FLSA claims is three years.

Plaintiffs may not recover under both the NYLL and the FLSA for the same injury.

Therefore, Plaintiff will recover under the statute that provides the greatest relief.  *See Charvac v.*

*M & T Project Managers of New York, Inc.*, No. 12 CV 5637, 2015 WL 5475531, at *4

(E.D.N.Y. June 17, 2015), *adopted as modified*, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015).

As the Complaint was filed on March 17, 2017, the FLSA statutory period covers Plaintiff's

wage claims from March 17, 2014 through the end of his employment in September 2016, where

the NYLL statutory period covers all of Plaintiff's wage claims during the entirety of his

employment with Defendants from August 2013 through September 2016.  Accordingly, the

undersigned respectfully recommends that Plaintiff be entitled to recover for the entire period of

his employment pursuant to NYLL.

**4.   Failing to Pay Minimum Wage Under the FLSA and NYLL**

Both federal and New York State laws mandate employers pay their employees a

minimum wage for the first 40 hours that employees work each week.  *See* 29 U.S.C. §

206(a)(1); N. Y. Lab. Law § 652(1).  For all time relevant to this litigation, Defendants were

required to pay Plaintiff the federal minimum hourly wage of $7.25. *See* 29 U.S.C. §
206(a)(1)(C) (mandating a minimum wage of $7.25 an hour as of July 24, 2019). New York
State minimum wage, however, required a higher hourly minimum wage. Specifically,
Defendants were obligated to pay Plaintiff a minimum hourly wage of $7.25 prior to December
31, 2013; $8.00 per hour from December 31, 2013 to December 30, 2014; $8.75 per hour from
December 31, 2014 through December 30, 2015; and $9.00 per hour from December 31, 2015
through December 30, 2016. *See* N.Y. Lab. Law § 652(1).

  An employer who fails to meet minimum wage obligations under the FLSA and the
NYLL "shall be liable to the employee or employees affected in the amount of their unpaid
minimum wages ... and in an additional amount as liquidated damages." 29 U.S.C. § 216(b); *See*
12 N.Y.C.R.R. § 143-1.3.

  Here, the complaint alleges that Plaintiff worked for Defendants from on or about August
2013 to on or about September 12, 2016. ECF 1, ¶ 5; Jamie Decl. ¶ 4. During this period
Plaintiff was entitled to $7.25 per hour from August 2013 through December 30, 2013; $8.00 per
hour from December 31, 2013 through December 31, 2014; $8.75 per hour from December 31,
2014 through December 30, 2015; and $9.00 per hour from December 31, 2015 through the end
of his employment in September 2016. Plaintiff's hourly wage from August 4, 2013 to
September 12, 2016 ranged from $.99 per hour to $4.35 per hour.

  As Plaintiff has alleged that the Defendants willfully paid him less than the minimum
amount required under both the FLSA and the NYLL during Plaintiff's employment with
Defendants, this Court respectfully recommends that Plaintiff has adequately shown that
Defendants have violated the minimum wage requirements under both the FLSA and the NYLL.

5. **Overtime and Spread-of-Hours Wages**

Federal and New York Sate law require that employers pay employees "one and one-half times" their "regular rate" for any hours worked in excess of 40 hours in a given week. 29 U.S.C. § 207(a); 12 N.Y.C.R.R. § 146-1.4. The employee's overtime rate is calculated using the statutory minimum wage where the employee's "regular" hourly rate falls below the required minimum wage. *See Pineda-Herrera v. Da-Ar-Da., Inc.*, No. 09 CV 5140, 2011 WL 2133825, at *3 (E.D.N.Y. May 26, 2011).

Here, Plaintiff claims that Defendants failed to pay him the overtime premium for the entirety of his employment, thereby violating both the FLSA and NYLL. ECF 1, ¶¶ 14-30. Plaintiff worked 101.5 hours per week from August 2013 through August 2014. From August 2014 through June 2016, Plaintiff worked 87 hours per week and from June 2016 until September 2016, Plaintiff worked 69 hours per week. Defendants did not pay Plaintiff overtime compensation for any hours worked in excess of 40 hours per week.

Certain employees are entitled under New York law to a "spread-of-hours" premium for each workday worked in excess of ten hours. *See* 12 N.Y.C.R.R. § 142-2.4; N.Y. Lab. Law § 650 et seq. Specifically, for any workday that lasts longer than ten hours, employees are entitled to receive "one additional hour of pay at the basic minimum hourly rate." *See* 12 N.Y.C.R.R. § 146-1.6(a).

Here, Plaintiff claims that his shifts exceeded a ten hour spread each day that he worked. In addition, Defendants never paid Plaintiff spread of hours compensation for any day in which his hours were spread beyond ten hours in a day. ECF 1, ¶¶ 34-35; Jamie Decl. ¶ 20. This Court respectfully recommends Defendants be found liable for failure to pay overtime and spread-of-

hour wages.

### 6.   Wage Theft Protection Act

New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL

effective April 9, 2011, requires employers to

> furnish each employee with a statement with every payment of
> wages, listing the following: the dates of work covered by the
> payment of wages; name of employee; name of employer; address
> and phone number of employer; rate or rates of pay and basis
> thereof, whether paid by the hour, shift, day, week, salary, piece,
> commission, or other, gross wages; deductions; allowances, if any,
> claimed as a part of the minimum wage; and net wages. . . [T]he
> statement shall include the regular hourly rate or rates of pay; the
> overtime rate or rates of pay; the number of regular hours worked,
> and the number of overtime hours worked.

N.Y. Lab. Law § 195(3).  The Act was passed by the legislature in an effort to provide employees

with more rights and remedies against employers who violate the NYLL.  *See Cooper v. Cavalry*

*Staffing, LLC*, 132 F. Supp 3d 460, 466 (E.D.N.Y. 2015).  Prior to February 27, 2015, the WTPA

entitled employees to recover statutory damages for violations of the wage statement requirement

of $100 per workweek, not to exceed $2,500.  *See* N.Y. Laws ch. 564 § 7, amending N.Y. Lab.

Law § 198(1-d).  As of February 27, 2015, the WTPA increased these penalties to $250 per

workday, not to exceed $5,000.  N.Y. Lab. Law § 198(1-d).

Here, Plaintiff claims that he never received wage statements from Defendants at any

point throughout the course of his employment.  ECF 1, ¶¶ 31-33; Jamie Decl. ¶¶ 21-22.

Accordingly, this Court respectfully recommends that Defendants be found liable for failure to

provide wage notices pursuant to the NYLL.

In addition to wage notices, the WTPA also requires, that at the time of hiring, employers

furnish each employee

> in writing in English and in the language identified by each
> employee as the primary language of such employee, at the time of
> hiring, a notice containing the following information: the rate or
> rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or
> lodging allowances; the regular day designated by the employer in
> accordance with section one hundred ninety-one of this article; the
> name of the employer; any "doing business as" names used by the
> employer; the physical address of the employer's main office or
> principal place of business, and a mailing address if different; the
> telephone number of the employer, plus such other information as
> the commissioner deems necessary.

N.Y. Lab. Law § 195(1)(a).  Prior to February 27, 2015, the WTPA entitled employees to recover

statutory damages for annual wage notice violations of $50. per work week, not to exceed

$2,500.  2010 N.Y. Laws ch. 564 § 7, amending N.Y. lab. Law § 198(1-b).  As of February 27,

2015, the penalty increased to $50. per workday, not to exceed $5,000.  N.Y. lab. Law § 198(1-

b).  *Reyes v. Art Tek Design, Ltd.* No. 16 CV 5168, 2018 WL 614980, at *8 (E.D.N.Y. Jan. 11,

2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2918).

Here, Plaintiff claims that he never received wage notices from Defendants at any point

throughout the course of his employment.  ECF 1, ¶¶ 31-33; Jamie Decl. ¶¶ 21-22. This Court

respectfully recommends that Defendants be found liable for failure to provide wage statements

to the Plaintiff pursuant to the NYLL.

Based upon the foregoing, the undersigned respectfully recommends that Plaintiff's

motion for entry of default judgment be granted.

## C.    Damages

Having determined Defendants' liability, "[t]he court must also determine the amount of

damages, actual or statutory, that may be assessed." *Lyons P'ship., L.P. v. D & L Amusement & Entm't, Inc.*, 702 F.Supp. 2d 104, 111 (E.D.N.Y. 2010).  Here, Plaintiff seeks compensatory damages, liquidated damages, pre-judgment interest and post judgment interest.[2]

### 1.    Minimum Wage, Overtime and Spread-of-Hours Wages

"Generally, an employee-plaintiff under the FLSA 'has the burden of proving that [s]he performed work for which [s]he was not properly compensated.'" *Berrezueta v. Royal Crown Pastry Shop, Inc.,* No. 12 CV 4380, 2013 WL 6579799, at * 3 (E.D.N.Y. Dec. 16, 2013) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011)).  "However, the employer bears the burden under state and federal law of maintaining records of the employees' wages, hours, and other conditions of employment." *Id.* (citing 29 U.S.C. § 211(c) (2006); N.Y. Lab. Law. § 196-a(a)).  Where, as here, Defendants have defaulted and have deprived Plaintiff of the necessary employment records and hampered his ability to prove damages, the Court may credit Plaintiff's testimony and estimates regarding his employment and calculate damages on that basis.  *See id.; see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) ("[W]here the employer has defaulted, [as here, the employees'] recollection and estimate of hours worked are presumed to be correct.") (citation and internal quotation marks omitted).

### a.    Failing to Pay Minimum Wage Under the FLSA and NYLL

Here, the complaint alleges that Plaintiff worked for Defendants from on or about August 2013 to on or about September 12, 2016.  ECF 1, ¶ 5; Jamie Decl. ¶ 4.  During this period Plaintiff was entitled to $7.25 per hour from August 2013 through December 30, 2013; $8.00 per hour from December 31, 2013 through December 31, 2014; $8.75 per hour from December 31,

---

[2]  Plaintiff  has waived any claim for attorneys' fees and costs.  *See* ECF 11-1 at 21.

2014 through December 30, 2015; and $9.00 per hour from December 31, 2015 through the end

of his employment in September 2016.  According to Plaintiff, Plaintiff's hourly wage from

August 4, 2013 to September 12, 2016 ranged from $.99 per hour to $4.35 per hour.  Plaintiff has

included a spreadsheet to his Declaration reflecting the damages alleged.  Jamie Decl. Ex. A.

The Court finds that this assertion strains credulity.  Although the Court recognizes Plaintiff

claims to have been paid only $100 per week, he would have been working 14.5 hours a day for

seven days a week for weeks on end for only $100.[3]   The Court does not find this assertion

credible, and in its discretion, will apply a 25% reduction to the total amount of minimum wages

awarded to Plaintiff.

Based upon Exhibit A, Plaintiff worked a total of 21 weeks in 2013 and his average

hourly wage ranged from $.99 to $2.96, while the required minimum hourly wage was $7.25.  *Id.*

The total minimum wage owed for 2013 was $12,343.44.  *Id.*  For 2014, Plaintiff worked a total

of 42 weeks and his average hourly wage ranged from $1.08 to $3.45, while the required

minimum hourly wage was $8.00.  *Id.*  The total minimum wage owed for 2014 was $25,736.92.

*Id.*  For 2015, Plaintiff worked a total of 43 weeks and his average hourly wage ranged from

$1.38 to $3.45, while the required minimum hourly wage was $8.75.  *Id.*  The total minimum

wage owed for 2015 was $25,770.27.  For 2016, Plaintiff worked a total of 28 weeks and his

average hourly wage ranged from $1.38 to $5.22, while the required minimum hourly wage was

$9.00.  *Id.*  The total minimum wage owed for 2015 was $14,943.69.

---

[3]        The Court notes that Plaintiff claims to have been paid $300/week for certain
weeks and also notes that on occasion Plaintiff worked 87 hours per week rather than 101.5
hours per week, however, the overall impression created by these exaggerated claims weighs in
favor of an across the board reduction.

16

In light of the Court's concerns regarding the veracity of Plaintiff's claims to have worked close to 100 hours a week for years on end at slightly more than $1.00 an hour,  the Court will apply a 25% reduction to the amount sought and respectfully recommend Plaintiff be awarded $59,095.74 in compensatory damages for Defendants' minimum wage violations under the NYLL and FLSA.

### b.   Overtime and Spread-of-Hours Wages

Plaintiff claims that Defendants failed to pay him the overtime premium for the entirety of his employment, thereby violating both the FLSA and NYLL.  ECF 1, ¶¶ 14-30. Plaintiff worked 101.5 hours per week from August 2013 through August 2014.  Jamie Decl. Ex. A. From August 2014 through June 2016, Plaintiff worked 87 hours per week and from June 2016 until September 2016, Plaintiff worked 69 hours per week.  *Id.*  Defendants did not pay Plaintiff overtime compensation for any hours worked in excess of 40 hours per week.  Between August 4, 2013 and December 28, 2013, Plaintiff worked at total of 61.5 hours overtime.  *Id.*  Based upon the difference between the hourly minimum wage and the overtime rate Plaintiff ($3.63) Plaintiff is entitled to $4,688.25.[4]   Between March 2, 2014 and December 27, 2014, Plaintiff worked at total of 108.5 hours overtime.  *Id.*  Based upon the difference between the hourly minimum wage and the overtime rate ($4.00) Plaintiff is entitled to $9,592.00.  *Id.*   Between March 1, 2015 and December 26, 2015, Plaintiff worked at total of 47 hours overtime.  *Id.* Based upon the difference between the hourly minimum wage and the overtime rate ($4.38) Plaintiff is entitled to $8,851.98.  *Id.*  Between March 6, 2016 and September 10, 2016, Plaintiff

---

[4]      The Court notes that Plaintiff was not paid the minimum wage during this period however, Plaintiff has been awarded compensatory damages to rectify that underpayment. *See* above.

worked at total of 76 hours overtime.  *Id.*  Based upon the difference between the hourly minimum wage and the overtime rate ($4.50) Plaintiff is entitled to $4,819.50.  *Id.*  The Court finds the calculations set forth in Exhibit A to Plaintiff's Declaration with respect to overtime compensation to be accurate and respectfully recommends Plaintiff be awarded $27,951.73 for unpaid overtime under both the FLSA and NYLL.

In addition, certain employees are entitled under New York law to a "spread-of-hours" premium for each workday worked in excess of ten hours.  *See* 12 N.Y.C.R.R. § 142-2.4; N.Y. Lab. Law § 650 et seq.  Specifically, for any workday that lasts longer than ten hours, employees are entitled to receive "one additional hour of pay at the basic minimum hourly rate."  *See* 12 N.Y.C.R.R. § 146-1.6(a).

Here, Plaintiff claims that his shifts exceeded a ten hour spread each day that he worked. ECF 1, at ¶¶ 34-35.  In addition, Defendants never paid Plaintiff spread of hours compensation for any day in which his hours were spread beyond ten hours in a day.  *Id*.; Jamie Decl. ¶ 20.  In 2013, Plaintiff worked over ten hours per day for 147 days, entitling him to $1,065.75.  Jamie Decl., Ex. A.  In 2014, Plaintiff worked over ten hours per day for 284 days, entitling him to $2,272.00.  *Id.*  In 2015, Plaintiff worked over ten hours per day for 258 days, entitling him to $2,257.50.  *Id.*  In 2016, Plaintiff worked over ten hours per day for 162 days, entitling him to $1,48.00.  *Id.*  This Court finds the calculations set forth in Exhibit A to Plaintiff's Declaration with respect to spread-of-hours compensation to be accurate and respectfully recommends Plaintiff be awarded $7,053.25 according to the spread of hours violations.

### 2.    Wage Theft Protection Act Damages

Plaintiff claims that he never received wage statements from Defendants at any point

throughout the course of his employment.  ECF 1, ¶¶ 31-33; Jamie Decl. ¶¶ 21-22.  Based upon

the calculations set forth in Exhibit A to Plaintiff's Declaration this Court finds Plaintiff reached

the statutory maximum with respect to wage statement statutory penalties and respectfully

recommends Plaintiff  be awarded $5,000.

      Plaintiff also seeks to recover damages for Defendants' failure to provide wage notices

pursuant to N.Y. Lab. Law § 195(1).  Plaintiff claims that he never received wage notices from

Defendants at any point throughout the course of his employment.  ECF 1, ¶¶ 31-33; Jamie Decl.

¶¶ 21-22.  Based upon the calculations set forth in Exhibit A to Plaintiff's Declaration this Court

finds Plaintiff reached the statutory maximum with respect to wage notice statutory penalties and

respectfully recommends Plaintiff  be awarded $5,000.

### 3.    Liquidated Damages

      Plaintiff seeks an award of liquidated damages.  Both the FLSA and NYLL provide

liquidated damages with respect to unpaid minimum and/or overtime wages.  Pursuant to the

FLSA, when an employer fails to pay his or her employees the minimum wage or overtime

compensation required by Sections 206 and 207 the employer is "liable to the employee ...

affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime

compensation ... and an additional equal amount as liquidated damages", 29 U.S.C. § 216(b).

The NYLL mirrors the FLSA and "entitles employees to 'liquidated damages equal to one

hundred percent of the total amount of the wages found to be due, unless the employer 'proves a

good faith basis to believe that its underpayment of wages was in compliance of the law.'"

*Chowdhury v. Hamza Express Food Corp.* 666 Fed.Appx. 59, 60-61 (2d Cir. 2016) (quoting

NYLL § 198(1-a)).  The Second Circuit has made clear that a Plaintiff may not recover liquidated

damages under both the FLSA and NYLL.  *Id.*

Here, the Plaintiff only seeks liquidated damages under the NYLL.   An award of liquidated damages is appropriate because Defendants have defaulted and thus has not carried their burden of demonstrating good faith.  As discussed above, this Court has recommended that Plaintiff be awarded damages for unpaid minimum wages, unpaid over time and spread of hours compensation totaling $94,100.72 for the period 2013 through 2016.  Pursuant to the NYLL Plaintiff is entitled to liquidated damages of 100% of that amount, or $94,100.72.  Accordingly, this Court respectfully recommends Plaintiff be awarded $113,799.30 in liquidated damages.

### 4.    Pre-judgment and Post-judgment Interest

It is "well settled" that pre-judgment interest is not available under the FLSA, *Begum v. Ariba Disc., Inc.*, No. 12 CV 6620, 2015 WL 223780, *3 (S.D.N.Y. Jan 16, 2015) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1998)).  "While prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA, . . . the Second Circuit has awarded prejudgment interest for violations of state wage laws." *Hernandez v. NJK Contractors, Inc.*, No. 09 CV 4812, 2015 WL 1966355, *50 (E.D.N.Y. May 1, 2015) (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).  Plaintiff is therefore entitled to prejudgment interest on his NYLL award at a statutory rate of 9% per year.  N.Y. C.P.L.R. 5004.  "[W]hen a plaintiff has received an award of federal liquidated damages, he is 'entitled to an award of prejudgment interest only on unpaid wages ... for which liquidated damages pursuant to the FLSA were not assessed.'"  *Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 WL 1600057, at *6 (S.D.N.Y. Apr. 7, 2015) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)), *report and recommendation adopted by*, 2015 WL 4557147

(S.D.N.Y. July 28, 2015).

When, as here, "damages were incurred over a period of time, interest may be calculated from the date damages were incurred or upon all of the damages from a single reasonable intermediate date." *Hernandez v. Punto y Coma Corp.*, No. 10 Civ. 3149, 2013 WL 4875074, at *9 (E.D.N.Y. Sept. 11, 2013).   "The midpoint of plaintiffs' employment is a reasonable intermediate date for purposes of calculating prejudgment interest." *Id.*

Based on the Complaint and Declarations, the Court estimates the midpoint of Plaintiff's employment as February 22, 2015.  The principal amount that Plaintiff is owed for minimum wage, overtime and spread of hours compensation is $94,100.72.  A 9% annual interest rate on $94,100.72 should be applied from February 22, 2015, through the date of entry of judgment. Since interest continues to accrue through the date of entry of judgment, I cannot recommend a specific interest award at this time.  Instead, this Court respectfully recommends that Plaintiff be awarded pre-judgment interest at the rate of 9% per annum through the date of entry of judgment as set forth above.

Post-judgment interest accrues automatically by operation of law.  It is governed by 28 U.S.C. § 1961, which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a).  According to the statute, "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id*.  Accordingly, this Court respectfully recommends the District Court award post-judgment interest as set forth above.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for Plaintiff shall serve a copy of this Report and Recommendation on the Defendants upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.  Failure to file objections within this period waives the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
       August 30, 2018

                                                   S/
                                    ARLENE R. LINDSAY
                                    United States Magistrate Judge